The final case for argument this morning is 23-1194 Mapsell, Ltd. v. Amperex Technology Ltd. v. Amperex Technology Ltd. v. Amperex Technology This is Mary Preston for the appellant, Mapsell, Ltd. We're asking the court to reverse the district court's holding that the 035 patent is invalid as indefinite. The 035 patent relates to cathode technology within lithium-ion batteries, and the claim term that the court found to be indefinite relates to two components of the chemical compositions that go into that cathode technology. There's a first component of the claim that specifies what metals can be used within that M1 term. I'm sorry. I think it's right to say what metals cannot be used. This is not insignificant to what I think is an incredibly simple argument on your point. Yes. The first clause says, stay out of three circles. More to come. And then, later, it says, actually, you can participate in parts of two of those circles. You just can't stay in the cobalt circle with certain percentages. Those are not inconsistent. I agree with your point, Your Honor. I think the first component of the claim is a Marcouche group that says you must select from cobalt, nickel, or manganese. The second portion of the term says there must be at least 30 percent. I think part of the reason that the district court got to where the district court got was this, to my mind, quite unfortunate language of options. This is declaring territory that somebody must stay out of. The first clause has a Venn diagram of nickel, cobalt, and manganese. Correct. You stay out of all three circles. Then, later, it says, no, actually, you've got to stay out of the circle that includes cobalt with certain percentages. It just freed up something that had previously been excluded. This option business, I think, conveyed the idea that the first part granted somebody an option, and then there was a take back. That's not what claim language does. I absolutely agree, Your Honor, absolutely agree. I think it's the foundation of what the district court got wrong, which is to view it in the way that Your Honor just described, and to, first of all, view two different portions of the same claim in isolation, which this court has been very clear is an incorrect way to construe claims, and certainly an incorrect way to evaluate them for purposes of indefiniteness. We have that in the Tinus case from this court. It's error to read the disputed claim term in isolation rather than in the context of the surrounding claim language. Repeatedly, what the district court does in its analysis of this indefiniteness issue is say, let's analyze what that first marquoise group means, and then finds a contradiction by separately analyzing the second portion of the claim term. But, as Your Honor points out, there is not a contradiction. There is simply the job is to evaluate two questions to see if you're inside or outside of the claim language. First question is, is the metal that's involved in M1 one of these three things? To your point, that zone of exclusion, the first zone of exclusion is, is it one of those three metals? Easily you can answer that question, yes or no. The second question is, does it have the requisite percentage of cobalt within M1? Now, interestingly, both sides' experts were able to go through an analysis and answer those questions, fundamentally satisfying the question about what patent claims are supposed to do. Can you define the terms of whether you're inside or outside? Both experts for our client Maxell and for ATL were able to at least answer those questions. Now, ATL's expert did go on to say there's an irreconcilable difference, but frankly that should be set aside because what it really shows is they could answer the question of whether you're inside or outside of the claim language. ATL itself also in a PTAB proceeding stated, and this is in our briefing, that it had, that a posita would understand the claim terms in the 035. That is fundamentally the question that we are supposed to be answering. Just as an aside, as a housekeeping matter, you've got an IPR and these claims, at least by the board, have been invalidated, have been found to be obvious? That is correct. Yes, there is a separate and... And what is the status of that? Is that on appeal here? It is on appeal. Well, right in the middle of briefing. I think your reply brief is due next week, right? I think you're right. Yes. And the district court has stayed the proceeding based on that or based on this appeal? That's correct. When the final written decisions came out in the 035 PTAB review, as well as other challenges, the district court stayed the underlying litigation. We were about a month out from trial and the district court stayed that litigation. And the IPR involves the other patents that are also in dispute, other than the 035 that are also in dispute. That is correct. Just to be clear, the 035 had been severed from the case earlier. So during the claim construction process, which is when the district court found the 035 claims to be indefinite, we asked the court to sever the 035 from the case so that it could be appealed. So that's how we got to, to your honors, was it was severed and separately entered judgment on that. So, your honors, we've talked about the first category of error that we think the district court conducted, which is this error of analyzing the two portions of the claim in isolation rather than context. The second error, category of errors, perhaps, that the district court made was to completely refuse to analyze the specification or the prosecution history. The district court acknowledges in its decision that we pointed the court to the prosecution history and the specification, but in its decision does not analyze it, does not discuss it, doesn't weigh anything about the specification or the prosecution, which we believe to be wrong as a matter of law and under the Supreme Court's directive in Nautilus, simply ignores it. I guess I'm sitting here thinking, if I conclude that there quite plainly is no contradiction, the sole basis for the district court decision is wrong and it should be reversed and I don't even need to look at the specification or the prosecution history, would that be wrong? Well, I think, your honor, there are cases... I mean, maybe there's a written description issue or something, but... I share your view that once you realize there is not a contradiction, there's really nothing further that needs to be analyzed. There are, of course, decisions from this court that talk about an indefiniteness analysis with claim language alone being improper. So I think it would be appropriate to both analyze the claim language and also look to the specification and the prosecution history, all of which supports that there's no contradiction and therefore no definite. I would venture to say, just to guess, that that analysis that you applied or that legal principle applies where we're going to find the claims... In order to find the claims indefinite, you also have to search the spec to see if there's something there, but not in the reverse circumstance that we have here. I agree with that, your honor. Yes, I agree with that. I think when the court is going to take a path to find an entire patent invalid as indefinite, it is inappropriate to stop at the claims. That is where one needs to make sure that they've evaluated the full teaching of the specification and the prosecution history. But as Judge Toronto just said, if you say that there's no indefiniteness issue in the claim language, I'm wondering whether or why our cases would say you still got to look at the spec. Perhaps it would be unnecessary. Your honor, because the district court did fail to analyze the spec and the prosecution history, and ATL in its briefing actually reinforces that point and tells you that it's unnecessary to look beyond the claims itself. We believe that is incorrect as a matter of law. When we do look at the specification, what we see is that there is a consistent teaching towards having Cobalt be part of M1 and therefore no contradiction. In many examples, all 13 examples that are in the specification, the applicant discusses having at least 30% Cobalt in M1. The specification also talks about preferably having at least 30% by mole and then increasing to higher percentages by mole of Cobalt in M1. Now, ATL argues that all of that discussion in the specification and our reliance on it is an improper effort to bring in limiting embodiments into the claims. Frankly, that entire line of cases is just irrelevant. This is not a situation where we're trying to bring into the claims limiting embodiments from the specification. This is the wrong line of cases to be considered here because what we're supposed to be doing under Nautilus and this court's teaching is to look to the specification to see if it conveys reasonable certainty about whether the claims are definite. In their briefing on this point, they do not cite any indefiniteness cases. They cite only Phillips, the Golight case, SRI, for general principles about how to conduct claim construction. The other case that they rely on in discussing the specification is the Allen Engineering case, which they point to as saying, when there is a contradiction, that is a basis for finding indefiniteness. I'll point out for the court, as the court is probably familiar, the Allen Engineering case involves an actual conflict between the specification and the claims. We don't have that here. Specification is consistent with the claims in requiring Cobalt in M1. I'd like to reserve the remainder of my time. Thank you. May it please the court. I'm David Block. I'm here from Greenberg Traurig. We represent ATL. This court has held many a time that we must construe claims with an eye toward giving effect to all of their terms, even if it renders the claims inoperable or invalid. That's a quote from Hemonics, but it's been said many a time. The problem here is that at least one has to mean something. And the phrase, at least one, appears right there in the definition of M1. And if M1 can be, quote, at least one of Cobalt, Nickel, or Manganese... And the claim says, and read on. And read on. And then the claim says, but actually it has to have Cobalt after all. Why is that a contradiction? It's just we're going to tell you in two steps. The excluded territory is this big, and actually we're going to now shrink it. It's only this big contained entirely within the first excluded territory. That absolutely would not be even... We wouldn't even raise an eyebrow if the second part were in a dependent claim. And since we read dependent claims as including everything in the independent claim, we would never say that was a contradiction. Because it's not a contradiction. Your Honor, I disagree. I think it is a contradiction to say that M1 can be all Manganese, at least one. I'm sorry, it doesn't say can be. This is a definition of excluded territory. Anytime you are doing something with Manganese or Nickel or Cobalt, you can't do that, subject to what we're about to say next. That is actually that you can do that. No, you can't. Or maybe you can do that. You can't. This is the definition of what's claimed as exclusive territory. Your Honor, they're claiming as exclusive territory to... That's what a claim does, right? Yes. That is what a claim does. But to claim a Marcouche group, you can select from any of these, as the District Court says, seven options. I'm sorry, it doesn't say you can select. It says if you select from any of those things, you're in trouble. You're on our territory. And now later it says we're going to say, well, we're going to refine that so that you have less territory to stay away from. And, Your Honor, the problem with that is that's not the way they claim, even in the same claim. Take a look at how they define M2 in the exact same claim. M2 is to be Magnesium and at least one of these other transition metal elements. Now that indicates that you have to have an M2 Magnesium plus another element. To say that M1 must be, maybe, represents, actually is the word they use in here. They don't use comprising or consisting generally of. They say represents. M1 represents at least one of Cobalt, Manganese, and Nickel, right? And so to say it represents at least one of those, if the person of ordinary skill in the art is to walk in and look at this claim as a whole, he says on the one hand, again, he's three years out of school. He's 25 years old. We know that. That's their definition of a person of skill in the art. He says on the one hand, it says that M1 represents at least one of all Nickel, all Manganese. I think we get your point. But could you answer a question that was inside of one of Judge Toronto's points, which is what if the second limitation here about Cobalt being 30% to 100% by mole of M1, what if that limitation was not in independent claim one, but let's say it was in dependent claim two? Okay. Would that create some kind of terrible conflict that would render dependent claim two indefinite? So to make sure I understand your hypothetical, claim one says M2 represents. No, M1. M1, right. It's the same limit. The first M1 limitation is exactly the same. Okay. But the second M1 limitation about Cobalt being 30% to 100% is out of claim one. It's not there because now it's in dependent claim two. Okay. Would dependent claim two be indefinite in your view? No. In that instance, claim two would be a subset of claim one. The problem is that they claim both the broad range and the narrow range in the same claim. And that's something even the MPEP, section 2173.05C, grounds upon. It says use of a narrow numerical range within a broader range in the same claim may render the claim indefinite precisely for the reason we have here. It's not that you have claim 10 that says it's all Cobalt. It's dependent claim 10. It's that you have the independent claim capturing both the broad scope, at least A, B, and C, and then at the same time saying that there's a narrower scope. And that creates an insoluble ambiguity. Can I just ask you a question? Did you cite the MPEP in your red brief? I did not, no. Oh. You know, again, I don't really think this is, you know, it's not a patent prosecution question. The MPEP is not binding authority on this court. Yes, I just keep getting fixated maybe on this point that this is inelegant, but it sure is not a contradiction. Your Honor. And the inelegance here, I gather, if I remember right, has a perfectly natural explanation, namely the second thing was added in prosecution. The second thing was added in prosecution, yes, seven years after the patent was applied for. And there's a whole sort of torturous sequence of events where first they restrict to Cobalt and then they say at least one of Cobalt, Nickel, and Manganese, and then they say, oh, and by the way, it's 30%. But they keep that at least one language in there throughout. And we know that they can claim it properly, right, because they did it not only in their related patent, the 019 patent. They do it in the same claim when they claim M2. And so what is the person of ordinary skill in the art to think? And that's really the problem here because it is not the court's job, as you know, to rewrite the claims in order to preserve their validity. That's the Hillrong case, right, where the meaning of a claim term is clear, as it is here. We do not rewrite the claim to preserve its validity. And what's actually being asked here is that the court disregard the phrase at least one and substitute it with Cobalt, comma, or Cobalt and at least one of Nickel and Manganese. And then with the further limitation that the amount of Cobalt must be 30% to 100%, right? It's the at least one that creates the problem here. The at least one is not just inelegant. It is contradictory because it is not the case that M1 can be at least one of Manganese or Nickel if it has to also have Cobalt, right? Again, you picture the thought experiment here where you do have your person of ordinary skill. He's got a BS in chemistry. He's come out of school. He's 25 years old. He looks at the patent, and he's not sure whether – and he is tasked by his boss. She says, I want to make exactly the lithium ion battery in the 035 patent claim one, but I want M1 to be entirely Nickel. Can I do it? Looks at the patent and says, well, on the one hand, it says at least one of Cobalt, Nickel, or Manganese. So it can't be Nickel. All Nickel. On the other hand, we've got this clause down here that says, you know, wherein the amount of Cobalt is 30% to 100%. Well, why does it have to have Cobalt in it? It doesn't say that up here. So what does he do? He says it's contradictory. I don't know. Goes to the specification. Why doesn't this youngster say, of course you can do that. Your product is not read on by one of the claim limitations. Done. Again, I think it goes to the same point we've been making. I think this is, to my mind, a single point case. We agree it's a single point case. We think the single point is that at least one has to bear some meaning. It has to be construed, indeed, as a person of ordinary skill in the art of construing. And it's not a phrase that requires expert testimony. It's not a phrase that requires anything more than anyone else's. I mean, those are three of the most common words in the English language, right? In the Encora case, which I believe both Judge Chen and Judge Taranto were on, right, the court says, look, if the term at issue would have so clear an ordinary meaning that a skilled artisan would not be looking for clarification in the specification, then you can just look at the claim. And if the claim says two inconsistent things, at least one of these three metals and also has to have cobalt in it, excluding all nickel, excluding all manganese, excluding nickel-manganese combinations, then there is a contradiction. Not an ambiguity, not something that one needs to then dig through the file history and the specification to resolve. Not a situation where the patentee has served as his or her own lexicographer using at least one in a way that's idiosyncratic, in a way that's different than the way other people use at least one. At least one means what it says, says what it means. We can cite Fortin. Here's who for it. And the reality is that that's the language that Maxell uses in its other patents. And it's the language Maxell uses in this patent when it comes to M2. I think we pointed you, pointed the court to the 019 patent, which is whether it's related is kind of an interesting academic question because the spec is the same, the title is the same, one of the inventors is the same, but because they're a different inventive entity, they're not technically related, they don't claim back to the same initial filing. But clearly there is some genetic relationship between the two since the specification is identical, since the name is identical, since they're suing the same products, since it covers essentially the same flavor of lithium ion battery. But if you look at the 019 patent, they're defining M2, they say magnesium, or magnesium, and at least one of the following other elements. That's how you would claim this. If you were trying to claim, you know, a Marcouche group in which cobalt was required. The problem here is you have a Marcouche group, and Marcouche is quite clear, right? The court talks about that in a number of different cases, sort of what the Marcouche concept means. I think that's a multi-layer, which I believe was one of your cases, Judge Toronto. A Marcouche group is a group that you are supposed to select from, right? It gives you all of the options. It gives you a range of different options that you can take from. And if you're going to have a dependent claim, like Judge Chen suggests, that limits that Marcouche group in some way, shape, or form, that's fine. But you can't do it all in the same claim, because if you do it in the same claim, you're contradicting yourself. And again, it is, as you say, a one-issue case. And the reason it's a one-issue case is because 112 requires you to particularly point out and distinctly claim your invention, precisely to the point you're making, Judge Toronto, so that competitors know how to avoid infringement. And if they cannot avoid infringement, it defeats the public notice function of the patent claims. To say at least one of these three, when in fact the patentee is not seeking that scope of protection, it fails to apprise the public of what is still open to it. That's in the Cox case, which I believe, Judge Prost, you were on. Like any other property, right, the scope and boundaries need to be clear. That's right there in Nautilus. And there is a heavy presumption in favor of the plain and ordinary meaning of the phrase, at least one. Like I said, three of the most conventional words in the English language. And the district court really did make an implied finding there, that at least one has its plain and ordinary meaning, right? And we know that the court can do that to sort of imply factual findings in the BASF case and others. And really there is no expression in the file history, in the specification, that the plaintiff intended at least one to mean anything more than what it actually means in plain English. And remember, it's not the court's job to uphold a patent's validity either to make it operable or to sustain its validity. If you take a look at the Chef America case, you'll recall that was a case in which the claim was to heating bread. We don't cite that one very much, do we? I kind of like it, though. Yeah, I know. It's kind of a fun one. It's an easy story. The claim says, quite literally, that the bread is supposed to be heated to 800 Fahrenheit. You heat the bread to 800 Fahrenheit, you've turned it into a charcoal briquette. Everyone understood that what was actually intended was that you heat the oven to that temperature. But it doesn't matter. And what the court said in that case is that, you know, and that was another case where experts came up and said anyone would understand that. A person of ordinary skill would understand what was intended was to heat the oven, not bread. Just like Dr. Look says here. I had to fight him for a while, but he admitted at least one means at least one. Everyone knows what that phrase means. He says, well, nevertheless, I'd still be able to understand what the inventor intended. That's not the test. It cannot be the case that you can use a phrase like at least one and then say, never mind, that's not actually what I meant. And that is the proposal here. What you're hearing from the other side, respectfully, is that the court should rewrite the phrase at least one to mean cobalt, or cobalt and at least one of dot, dot, dot, wherein the volume of cobalt is x. Until you say that cobalt is required, the person of ordinary skill in the art doesn't know it, and that's the problem. Thank you. We've got a few minutes left if you need them. Thank you, Your Honor. Just a few points that I want to respond to from what my colleague mentioned. Both in the red brief and listening to my colleague, you would imagine that this was an appeal about what the phrase at least one means. It is not. It is an appeal about a finding that this patent is invalid for indefiniteness. ATL doesn't even acknowledge that it is their burden to prove that indefiniteness with clear and convincing evidence. It's just an interesting reframing of the issue. I think there's not a construction issue around at least one, what it means. The fundamental issue is the same thing that we started with, which is when you read the entire claim together, does a posita understand what it means? And the answer to that question is yes. Interestingly, this hypothetical that was discussed about a young engineer not being able to understand what the two portions of the M1 claim mean is in conflict with what ATL's expert was able to do, and what ATL said was the understanding of a posita, that a posita would understand what the claim terms mean and that the claim term would have its plain and ordinary meaning. Both of those points are in the record. With respect to my colleague's acknowledgment that if this limitation on the molar percentage was in a dependent claim, there would not be an indefiniteness issue, I think that's critical because there is no doubt that, of course, a dependent claim has all of the limitations of the independent claim and there should not be a different result for indefiniteness if this limitation comes in a dependent claim or an independent claim. We've cited this point in our blue brief on page 42, where we talk about claim 10 in the 035, which actually does have a limitation of 100% cobalt. They don't have a challenge with that, and they've acknowledged that's fine, but somehow when the limitation is in the independent claim, they are unable to understand it. With respect to the question of how the Marcouche group should be construed as options or as things to select from, as the court well knows, the objective of a Marcouche group is that it is a closed group. The point is it is a list of exclusionary things, meaning there cannot be any other metals in that group. It does not imply that any of those things must be in M1. The point is that there cannot be other metals in there. So again, when we're looking at a posita, evaluating whether or not both of these limitations have been met, first question, is it one of the metals? Second question, is it the right amount of cobalt? That's it. With respect to the comments that were made about the 019 patent, I think we heard a little bit of a different approach just now about whether the 019 has some, I think I wrote it down correctly, genetic relationship to the 035. I don't know what that phrase means, but in their briefing, they consistently discussed the 019 as a related patent. Just so the record is clear, it is not related, and the specification is not identical. They're not related patents. There is not an identical specification. There is an overlap of inventors and some common language in the specification. And unless Your Honors have any remaining questions, I'll yield the rest of my time. Thank you. We thank both sides. The case is submitted. That concludes our proceedings this morning.